Case 9:86-cv-00198-CCL   Document 169-1   Filed 01/05/06   Page 1 of 20

# Decade-long Smith case costs now past $300,000

**By JO ANN SPEELMAN**
*The Daily Inter Lake*

Flathead County Sheriff Jim Dupont thought the $2,500 spent in early 1982 to fly Ronald A. Smith from Great Falls to Kalispell to face two murder charges was a big expense.

But that was to prove just a drop in the bucket of taxpayer costs in the celebrated murder case. Nearly 13 years later, expenses continue to pile up for Flathead County, state and federal governments, as the Canadian murderer's repeated appeals work their way through the court system.

Calculating actual costs in the Smith case is impossible, but best estimates conservatively put the tab at more than $300,000 so far.

Smith, now 37, pleaded guilty to shooting two young Browning men near Marias Pass after they gave him and two companions a ride. He is fighting a death sentence that has been imposed on him three times and overturned three times. He is to be sentenced a fourth time in May.

Smith has not only appealed the state death sentence but has claimed in a federal lawsuit that his civil rights were violated.

After the bodies of Thomas Running Rabbit Jr. and Harvey Mad Man Jr. were found in Flathead County, the sheriff's office paid $1,000 for a helicopter to fly the state pathologist to the crime scene, and $1,900 for autopsies on the victims.

Then a plane was hired to bring Smith to Kalispell, and there were additional costs to bring two other defendants in the case back here.

There already had been massive search expenses; now there were investigation and jail costs. When Smith and two others overpowered a jailer and escaped briefly, more costs were incurred.

For the Smith case to date, Undersheriff Chuck Curry said, "Very conservative numbers would be 800 hours of labor at a minimum of $10 an hour, for $8,000 wages. Add to that the 522 days, which is the total Smith has been in the county jail since the case began. We put that cost at $5 a day for $2,610. Then there's fuel cost for 13 trips to and from the prison to our jail at $390."

Bonnie Olson, manager of the county attorney's office, said her office has paid out about $5,000 for expert witnesses, plus costs of the county attorney's trip to San Francisco to argue Smith's appeal in the federal Ninth Circuit Court.

"We've probably averaged 100 hours of attorney time a year on this case," she said. "We don't keep track of each case, but this one is labor-intensive." At an average of $35 an hour over the life of the case, the cost figures out to $45,500.

Deputy Attorney General Betsy Griffing, who has handled the state's case since 1990, has put in at least 300 hours each of the past two years, and perhaps 200 hours each of the prior three years. Added to that are the hours of the first four state lawyers who worked on the many appeals in the case.

Griffing "guesstimates" the state has invested at least 2,400 attorney hours at $35 an hour, for an $84,000 bill.

Smith has been defended by publicly paid attorneys. Before 1993, costs of his defense were included in the county's overall public-defender budget. The costs were

See SMITH on Page A2

not itemized, but they amounted to thousands of dollars for attorneys, witnesses and testing.

Since 1993, attorney Don Vernay has been paid $8,964 specifically to defend Smith, and Greg Jackson has been paid $26,765, including expenses. Bills for the latest hearing in January have not been received.

In the federal case, current files show Jackson, of Helena, has collected $29,490 and Vernay $2,671; another $1,600, plus unspecified air fare, was paid to expert witnesses. Earlier files were not available.

Figuring minimum hours for county, state, federal and public defender attorneys in the Smith case, it adds up to about four years of legal work at an average of 2,080 hours a year.

Smith has spent about 10 years in prison, the rest of the time in the county jail. The cost to keep each inmate in prison is $14,812 annually, or an estimated $148,120 to date.

---

In May, he will be sentenced again for two counts of kidnapping and two counts of deliberate homicide. He has acknowledged from the beginning that he killed the two men.

Bodies of the two victims, young men who were headed for college that fall, were found after about six weeks of searching by family members and authorities.

Smith was arrested in Rock Springs, Wyo., on Aug. 27, 1982, for interstate transportation of a stolen motor vehicle. His companions, Rodney James Munro, 21, and Andre Fontaine, 19, had been arrested Aug. 6 in Eureka, Calif., on the same charges after they were found with a vehicle reported stolen in Browning. They were all returned to Great Falls.

Munro was sentenced to prison in Montana, and Fontaine, who did not participate in the murders, received a lighter sentence and was returned to Canada.

# Smith defense costs piling up

By JO ANN SPEELMAN
The Daily Inter Lake

Ron Smith's attorneys have submitted $104,706 in bills for handling the latest sentencing of the confessed killer.

The bills range from professional services at $150 an hour to $2.30 for two Baskin-Robbins ice cream cones, $2.19 for toothpaste, $8.55 for a pound of Starbucks coffee, a $17.50 dinner at the Coyote Riverhouse and $150 to write a letter to an attorney.

Many expenses exceed those allowed by county policies, such as the amount specified for meals or lodging. But County Auditor Anita Hoye said they are allowed because her office has no way of knowing what arrangements the presiding out-of-county judge has approved.

**MISSOULA DISTRICT** Judge John Larson is presiding over the Smith case. He is expected to sentence Smith within a couple of months.

Smith, now 37, pleaded guilty to killing two Browning cousins near Marias Pass in August 1982. He has been sentenced to death three times, and each sentence has been overturned.

> The bills — which total $104,706 — range from professional services at $150 an hour to $2.30 for two Baskin-Robbins ice cream cones, $2.19 for toothpaste, $8.55 for a pound of Starbucks coffee, a $17.50 dinner at the Coyote Riverhouse and $150 to write a letter to an attorney.

Defense team bills approved by Larson and submitted to the county auditor since late February include $15,664.05 to Bigfork attorney Don Vermay and $89,041.95 to Helena lawyer Greg Jackson and several expert witnesses.

**LARSON SAID HE** did not set down detailed guidelines for expenses. "That's not usually done. This is a death penalty case, and expenses run high," he said.

Larson said he is "sensitive to" the rights of the defense team to meet with and have witnesses testify. Early on, I limited the travel of their expert witnesses because of their per-hour costs. Instead, the defense attorneys,

are travel expenses, such as their April trip to Alberta, which cost $636.35 in mileage, plus rooms and meals for the two lawyers and a paralegal. They interviewed and videotaped witnesses and Smith family members for testimony at the May hearing.

**THE TWO HAVE** made several trips to California to meet with expert witnesses. Airfares, motels, taxi rides, rental cars, meals and other expenses are among defense bills piling up in the auditor's office. The bills are paid and the county forwards them to the state, which reimburses the county for some costs.

From 50 cents to review a brief, 25 cents for a telephone call or $225 for an hour and a half to outline testimony, each cost is documented and billed out.

County policy authorizes $4 for breakfast, $6 for lunch and $10 for dinner, payable only when meals are eaten out of the county. For out-of-state travel, the county authorizes $30 daily for meals.

The county rates have not been applied to the Smith defense.

who are getting much less an hour, do the traveling."

**A BILL FOR THE** services of expert witness Dr. Anne Evans, a clinical and forensic psychologist from Los Angeles, from Aug. 4, 1994, through May 4, 1995, was $24,945.55. That included $22,787.50 in professional services at $150 per hour, whether for interpreting psychological tests, writing letters or traveling. The balance was for such expenses as $91 lunches, $24 dinners and $3 airport parking fees.

Jackson and Vermay, acting as public defenders, bill their time at the agreed-to rate of $45 an hour.

In addition to their time, there

See DEFENSE on Page A2

elicopters, but committed no round troops.

"If a U.N. unit needs an emergency extraction, we would

ing a way to use the hostages as a bargaining chip to break their international isolation and avoid further airstrikes.

The freed hostages arrived late Saturday in Zagreb, Croatia, the U.N. headquarters for former Yugoslavia. They appeared well but tired.

## Defense
Continued from Page A1

team. The defenders have submitted bills for dinners costing up to $20 and breakfasts at more than $12 each.

"Right before and after the sentencing hearing," Larson said, "it seemed more important for my focus to be on the merits of the case, rather than divert attention and scrutinize each expense voucher so closely. I'll tighten down again now as we step back from the sentencing."

He noted that incidental expenses are not unusual.

"Also," said Larson, "I have to take into account some of the different standards and expectations of defense witnesses from other areas. I've tried to be flexible and understanding without letting things get out of hand.

"In fact, I recently refused reimbursement to Vernay for his telephone calls with you," he told the Inter Lake's reporter.

Prosecution costs for the case are not itemized in the same way as defense costs because they blend into the everyday costs of salaries and operations.

However, the county attorney's office manager, Bonnie Olson, said state expert witnesses get what the county allows for expenses. Motel rooms are paid for at state rates, not the open or commercial rate. And there are no ice cream cones, pounds of coffee or lemon juice, she said.

Larson said he tried unsuccessfully to get rooms for the defense team at the state rate during the recent sentencing hearing. He and other court officials and state witnesses got the $31.20-per-night state room rate, while defense team rooms were billed at the $54.24 commercial rate.

Vernay said lawyers used out-of-state experts in the Smith case "because there aren't any of that caliber in Montana. Our costs are spelled out. Those same sorts of costs are there for the state, they're just not itemized per individual or case."

Under a new state program, the county will be reimbursed for many of the Smith case costs.

"That will spread out the high price of such a death-penalty case, so Flathead County taxpayers aren't footing the entire bill," Larson said.

The two Flathead County district judges declined to comment on the costs, since the matter is still a Flathead District Court case.



CINEMA

RECEIVED
JAN 08 1995
JACKSON & RICE

John W. Larson, District Judge
Fourth Judicial District Dept. 3
Missoula County Courthouse
Missoula, MT 59802
(406) 523-4773

CLERK OF DISTRICT COURT
95 DEC -6 AM 10: 46
FILED
BY_____
       DEPUTY

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

**STATE OF MONTANA,**

      **Plaintiff,**

vs.

**RONALD ALLAN SMITH,**

      **Defendant.**

Cause No. DC-82-126(B)

**ORDER ON ATTORNEY'S FEES**

  Following the resentencing and automatic appeal in this matter to the Montana Supreme Court, counsel submitted a request for increased compensation and the approval of compensation rendered since the resentencing.

  This Court reviewed prior Montana Supreme Court appeals, not only in this case but in other capital cases, and determined that it is the generally accepted practice, and certainly very logical, for the counsel who participated in sentencing to undertake the appeal. To be sure the more recent appeal, State of Montana v. Smith, 261 Mont. 419, 863 P.2d 1000 (1993), was undertaken by the State Appellate Defender, the Court has determined this to be the exception and not the rule.

  In this instance, it was of great benefit to the Defendant and

Order on Attorney's Fees - Page 1

**EXHIBIT B**

the progress of this case that Mr. Gregory Jackson, Esq., was available to undertake the role as lead counsel during the resentencing. First, Mr. Jackson had extensive experience with this case and the federal habeas appeal. Second, Mr. Jackson was available when Mr. Don Vernay, Esq., during the resentencing process, determined he could no longer continue and withdrew from the case. Later, Mr. Vernay returned to the case and was substituted with the agreement of the Flathead Public Defender.

The Court, during the appeal process, does not believe that it is necessary to pay travel time to counsel since the phone lines, fax lines, etc., are available to coordinate meetings. Thus, the expenses requested for travel time by Mr. Vernay are DENIED. Second, since it is Mr. Jackson's role as lead counsel to determine the various allocations of time, this Court approves all of Mr. Jackson's time rendered in October and November 1995. Further, the Court believes that Mr. Vernay's time for the month of October should be reduced by eight hours, which is half of Mr. Jackson's claimed time in October, and three hours during November. Also, the Flathead County Auditor's office reimburses for out-of-county per diem at $4.00 for breakfast, $6.00 for lunch and $8.00 for dinner; for out-of-state per diem it is $6.50 for breakfast, $8.50 for lunch and $15.00 for dinner. Therefore, the Court reduces Mr. Vernay's meals to the appropriate amount.

This reduction properly focuses the role of Mr. Jackson as lead counsel and voids unnecessary duplication. The Court notes that in the federal habeas appeals that only one counsel, Mr. Jackson, is

1  employed by the Court, and also in most other appeals to the Montana
2  Supreme Court only one counsel was involved.
3       DATED this 5th day of December, 1995.

*John W. Larson*
JOHN W. LARSON, District Judge

cc: Don Vernay
    Greg Jackson
    Thomas Esch
    Flathead County Auditor

1/3/96
SB

Order on Attorney's Fees - Page 3

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 96-010

JAN 11 1995

JACKSON & RICE

FILED

JAN -9 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

RONALD ALLEN SMITH,

   Petitioner,

v.

DISTRICT COURT OF THE ELEVENTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
FLATHEAD, and HONORABLE JOHN W.
LARSON, District Judge,

   Respondents.

O R D E R

  Petitioner has filed herein an application for writ of supervisory control or other alternative writ. The application was entitled "State of Montana, Plaintiff/Appellee, vs. Ronald Allen Smith, Defendant/Appellant." Pursuant to Rule 17(c), M.R.App.P., the petition has been recaptioned as shown above.

  The petition seeks relief in relation to a December 5, 1995 order entered in the District Court for the Eleventh Judicial District, Flathead County, in Cause No. DC-82-126(B). That order relates to attorney fees and certain expenses, specifically including travel expenses, incurred by defense counsel in relation to the appeal of that matter to this Court.

  IT IS ORDERED:

  1. Pursuant to Rule 17(c), M.R.App.P., petitioner is directed to serve upon the Honorable John W. Larson, District Judge, a copy of the application for writ of supervisory control filed herein.

  2. The petition for writ of supervisory control or other alternative writ is granted as specifically set forth and limited herein.

  3. The following portion of the District Court's December 5, 1995 order is stricken:

> The Court, during the appeal process, does not believe
> that it is necessary to pay travel time to counsel since

1

EXHIBIT C

the phone lines, fax lines, etc., are available to coordinate meetings. Thus, the expenses requested for travel time by Mr. Vernay are DENIED.

Counsel for defendant and appellant shall be allowed actual and necessary travel expenses relating to preparation of the defense of the defendant and appellant in this appeal.

4. The remainder of the relief sought in the petition for supervisory control or other alternative writ is DENIED.

5. The Clerk is directed to mail a true copy of this order to counsel for petitioner, counsel for the State of Montana in Flathead County Cause No. DC-82-126(B) and to the Honorable John W. Larson, District Judge.

DATED this 9th day of January, 1996.

_____
Chief Justice

_____
_____
_____
_____
_____
Justices

IN THE SUPREME COURT OF THE STATE OF MONTANA

Nos. 95-477 and 95-494

RECEIVED
APR 10 1996
JACKSON & RICE

STATE OF MONTANA,

    Plaintiff and Respondent,

v.

    O R D E R

RONALD ALLEN SMITH,

    Defendant and Appellant.

Appellant has moved to remand this case to the district court or to allow supplementation of the record on appeal. He has attached to his motion the materials he proposes be added to the record, copies of seven newspaper articles. Respondent has filed a response asking that the motion be denied.

Appellant cites this Court's opinion in State v. Keith (1988), 231 Mont. 214, 754 P.2d 474, as authority that the offered newspaper articles should be admitted to demonstrate that the District Court was swayed by public opinion or media pressure. However, the subject of the only article quoting the District Judge was the high cost of this case. In that article, Judge Larson acknowledged that costs run high in death penalty cases. Appellant has offered nothing to indicate that those high costs, nor any of the other newspaper articles, influenced the District Court in sentencing Smith.

We conclude that, to the extent the newspaper articles are not already part of the record in this case, they have not been shown to be appropriate or relevant for consideration on appellate review. Appellant's motion is therefore DENIED.

The Clerk is directed to mail copies of this order to counsel of record for the respective parties.

DATED this 9th day of April, 1996.

*/s/ J. A. Turnage*
Chief Justice

FILED
APR 09 1996
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

EXHIBIT D

_____William E. Hunt_____
_____Karla M. Gray_____
_____W. William Leaphart_____

_____
Justices

# Decade-long Smith case costs now past $300,000

By JO ANN SPEELMAN
The Daily Inter Lake

Flathead County Sheriff Jim Dupont thought the $2,500 spent in early 1982 to fly Ronald A. Smith from Great Falls to Kalispell to face two murder charges was a big expense.

But that was to prove just a drop in the bucket of taxpayer costs in the celebrated murder case. Nearly 13 years later, expenses continue to pile up for Flathead County, state and federal governments, as the Canadian murderer's repeated appeals work their way through the court system.

Calculating actual costs in the Smith case is impossible, but best estimates conservatively put the tab at more than $300,000 so far.

Smith, now 37, pleaded guilty to shooting two young Browning men near Marias Pass after they gave him and two companions a ride. He is fighting a death sentence that has been imposed on him three times and overturned three times. He is to be sentenced a fourth time in May.

Smith has not only appealed the state death sentence but has claimed in a federal lawsuit that his civil rights were violated.

After the bodies of Thomas Running Rabbit Jr. and Harvey Mad Man Jr. were found in Flathead County, the sheriff's office paid $1,000 for a helicopter to fly the state pathologist to the crime scene, and $1,900 for autopsies on the victims.

Then a plane was hired to bring Smith to Kalispell, and there were additional costs to bring two other defendants in the case back here.

There already had been extensive search expenses; now there were investigation and jail costs. When Smith and two others overpowered a jailer and escaped briefly, more costs were incurred.

For the Smith case to date, Undersheriff Chuck Curry said, "Very conservative numbers would be 800 hours of labor at a minimum of $10 an hour, for $8,000 wages. Add to that the 522 days, which is the total Smith has been in the county jail since the case began. We put that cost at $5 a day for $2,610. Then there's fuel cost for 13 trips to and from the prison to our jail at $390."

Bonnie Olson, manager of the county attorney's office, said her office has paid out about $5,000 for expert witnesses, plus costs of the county attorney's trip to San Francisco to argue Smith's appeal in the federal Ninth Circuit Court.

"We've probably averaged 100 hours of attorney time a year on this case," she said. "We don't keep track of each case, but this one is labor-intensive." At an average of $35 an hour over the life of the case, the cost figures out to $45,500.

Deputy Attorney General Betsy Griffing, who has handled the state's case since 1990, has put in at least 300 hours each of the past two years, and perhaps 200 hours each of the prior three years. Added to that are the hours of the first four state lawyers who worked on the many appeals in the case.

Griffing "guesstimates" the state has invested at least 2,400 attorney hours at $35 an hour, for an $84,000 bill.

Smith has been defended by publicly paid attorneys. Before 1993, costs of his defense were included in the county's overall public-defender budget. The costs were

See SMITH on Page A2

not itemized, but they amounted to thousands of dollars for attorneys, witnesses and testing.

Since 1993, attorney Don Vernay has been paid $8,964 specifically to defend Smith, and Greg Jackson has been paid $26,765, including expenses. Bills for the latest hearing in January have not been received.

In the federal case, current files show Jackson, of Helena, has collected $29,490 and Vernay $2,671; another $1,600, plus unspecified air fare, was paid to expert witnesses. Earlier files were not available.

Figuring minimum hours for county, state, federal and public defender attorneys in the Smith case, it adds up to about four years of legal work at an average of 2,080 hours a year.

Smith has spent about 10 years in prison, the rest of the time in the county jail. The cost to keep each inmate in prison is $14,812 annually, or an estimated $148,120 to date.

---

In May, he will be sentenced again for two counts of kidnapping and two counts of deliberate homicide. He has acknowledged from the beginning that he killed the two men.

Bodies of the two victims, young men who were headed for college that fall, were found after about six weeks of searching by family members and authorities.

Smith was arrested in Rock Springs, Wyo., on Aug. 27, 1982, for interstate transportation of a stolen motor vehicle. His companions, Rodney James Munro, 21, and Andre Fontaine, 19, had been arrested Aug. 6 in Eureka, Calif., on the same charges after they were found with a vehicle reported stolen in Browning. They were all returned to Great Falls.

Munro was sentenced to prison in Montana, and Fontaine, who did not participate in the murders, received a lighter sentence and was returned to Canada.

# Smith defense costs piling up

By JO ANN SPEELMAN
The Daily Inter Lake

Ron Smith's attorneys have submitted $104,706 in bills for handling the latest sentencing of the confessed killer.

The bills range from professional services at $150 an hour to $2.30 for two Baskin-Robbins ice cream cones, $2.19 for toothpaste, $8.55 for a pound of Starbucks coffee, a $17.50 dinner at the Coyote Riverhouse and $150 to write a letter to an attorney.

Many expenses exceed those allowed by county policies, such as the amount specified for meals or lodging. But County Auditor Anita Hoye said they are allowed because her office has no way of knowing what arrangements the presiding out-of-county judge has approved.

**MISSOULA DISTRICT** Judge John Larson is presiding over the Smith case. He is expected to sentence Smith within a couple of months.

Smith, now 37, pleaded guilty to killing two Browning cousins near Marias Pass in August 1982. He has been sentenced to death three times, and each sentence has been overturned.

> The bills — which total $104,706 — range from professional services at $150 an hour to $2.30 for two Baskin-Robbins ice cream cones, $2.19 for toothpaste, $8.55 for a pound of Starbucks coffee, a $17.50 dinner at the Coyote Riverhouse and $150 to write a letter to an attorney.

Defense team bills approved by Larson and submitted to the county auditor since late February include $15,664.05 to Bigfork attorney Don Vernay and $89,041.95 to Helena lawyer Greg Jackson and several expert witnesses.

**LARSON SAID HE** did not set down detailed guidelines for expenses. "That's not usually done. This is a death penalty case, and expenses run high," he said.

Larson said he is "sensitive to the rights of the defense team to meet with and have witnesses testify. Early on, I limited the travel of their expert witnesses because of their per-hour costs. Instead, the defense attorneys are travel expenses, such as their April trip to Alberta, which cost $636.35 in mileage, plus rooms and meals for the two lawyers and a paralegal. They interviewed and video-taped witnesses and Smith family members for testimony at the May hearing.

**THE TWO HAVE** made several trips to California to meet with expert witnesses. Airfares, motels, taxi rides, rental cars, meals and other expenses are among defense bills piling up in the auditor's office. The bills are paid, and the county forwards them to the state, which reimburses the county for some costs.

**A BILL FOR THE** services of expert witness Dr. Anne Evans, a clinical and forensic psychologist from Los Angeles, from Aug. 4, 1994 through May 4, 1995, was $24,945.55. That included $22,787.50 in professional services at $150 per hour, whether for interpreting psychological tests, writing letters or traveling. The balance was for such expenses as 39 lunches, 24 dinners and 3 airport parking fees.

Jackson and Vernay, acting as public defenders, bill their time at the agreed-to rate of $45 an hour.

In addition to their time, there are

who are getting much less an hour, do the traveling.

From 50 cents to review a brief, 25 cents for a telephone call or $225 for an hour and a half to outline testimony, each cost is documented and billed out.

County policy authorizes $4 for breakfast, $6 for lunch and $10 for dinner, payable only when meals are eaten out of the county. For out-of-state travel, the county authorizes $30 daily for meals.

The county rates have not been applied to the Smith defense.

See DEFENSE on Page A2

elicopters, but committed no ground troops.

"If a U.N. unit needs an emergency extraction, we would ing a way to use the hostages as a bargaining chip to break their international isolation and avoid further airstrikes.

The freed hostages arrived late Saturday in Zagreb, Croatia, the U.N. headquarters for former Yugoslavia. They appeared well but tired.

## Defense
*Continued from Page A1*

team. The defenders have submitted bills for dinners costing up to $20 and breakfasts at more than $12 each.

Right before and after the sentencing hearing, Larson said, "It seemed more important for my focus to be on the merits of the case, rather than divert attention and scrutinize each expense voucher so closely. I'll tighten down again now as we step back from the sentencing."

He noted that incidental expenses are not unusual.

"Also," said Larson, "I have to take into account some of the different standards and expectations of defense witnesses from other areas. I've tried to be flexible and understanding without letting things get out of hand.

"In fact, I recently refused reimbursement to Vernay for his telephone calls with you," he told the Inter Lake's reporter.

Prosecution costs for the case are not itemized in the same way as defense costs because they blend into the everyday costs of salaries and operations.

However, the county attorney's office manager, Bonnie Olson, said state expert witnesses get what the county allows for expenses. Motel rooms are paid for at state rates, not the open or commercial rate. And there are no ice cream cones, pounds of coffee or lemon juice, she said.

Larson said he tried unsuccessfully to get rooms for the defense team at the state rate during the recent sentencing hearing. He and other court officials and state witnesses got the $31.20-per-night state room rate, while defense team rooms were billed at the $54.24 commercial rate.

Vernay said lawyers used out-of-state experts in the Smith case "because there aren't any of that caliber in Montana. Our costs are spelled out. Those same sorts of costs are there for the state, they're just not itemized per individual or case."

Under a new state program, the county will be reimbursed for many of the Smith case costs.

"That will spread out the high price of such a death-penalty case, so Flathead County taxpayers aren't footing the entire bill," Larson said.

The two Flathead County district judges declined to comment on the costs, since the matter is still a Flathead District Court case.



CINEMA

STRAND 7:00-9:20

RECEIVED

JAN 08 1995

JACKSON & RICE

CLERK OF DISTRICT COURT

95 DEC -6 AM 10: 46

FILED

BY_____
      DEPUTY

1  John W. Larson, District Judge
   Fourth Judicial District Dept. 3
2  Missoula County Courthouse
   Missoula, MT 59802
3  (406) 523-4773

6           MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

8  **STATE OF MONTANA,**                    Cause No. DC-82-126(B)

                        Plaintiff,
10  vs.                                     ORDER ON ATTORNEY'S FEES

11  **RONALD ALLAN SMITH,**

12                      Defendant.

Following the resentencing and automatic appeal in this matter to the Montana Supreme Court, counsel submitted a request for increased compensation and the approval of compensation rendered since the resentencing.

This Court reviewed prior Montana Supreme Court appeals, not only in this case but in other capital cases, and determined that it is the generally accepted practice, and certainly very logical, for the counsel who participated in sentencing to undertake the appeal. To be sure the more recent appeal, State of Montana v. Smith, 261 Mont. 419, 863 P.2d 1000 (1993), was undertaken by the State Appellate Defender, the Court has determined this to be the exception and not the rule.

In this instance, it was of great benefit to the Defendant and

Order on Attorney's Fees - Page 1

**EXHIBIT B**

1  the progress of this case that Mr. Gregory Jackson, Esq., was
2  available to undertake the role as lead counsel during the
3  resentencing. First, Mr. Jackson had extensive experience with this
4  case and the federal habeas appeal. Second, Mr. Jackson was
5  available when Mr. Don Vernay, Esq., during the resentencing
6  process, determined he could no longer continue and withdrew from
7  the case. Later, Mr. Vernay returned to the case and was
8  substituted with the agreement of the Flathead Public Defender.

9  The Court, during the appeal process, does not believe that it
10 is necessary to pay travel time to counsel since the phone lines,
11 fax lines, etc., are available to coordinate meetings. Thus, the
12 expenses requested for travel time by Mr. Vernay are DENIED.
13 Second, since it is Mr. Jackson's role as lead counsel to determine
14 the various allocations of time, this Court approves all of Mr.
15 Jackson's time rendered in October and November 1995. Further, the
16 Court believes that Mr. Vernay's time for the month of October
17 should be reduced by eight hours, which is half of Mr. Jackson's
18 claimed time in October, and three hours during November. Also, the
19 Flathead County Auditor's office reimburses for out-of-county per
20 diem at $4.00 for breakfast, $6.00 for lunch and $8.00 for dinner;
21 for out-of-state per diem it is $6.50 for breakfast, $8.50 for lunch
22 and $15.00 for dinner. Therefore, the Court reduces Mr. Vernay's
23 meals to the appropriate amount.

24 This reduction properly focuses the role of Mr. Jackson as lead
25 counsel and voids unnecessary duplication. The Court notes that in
26 the federal habeas appeals that only one counsel, Mr. Jackson, is

Order on Attorney's Fees - Page 2

1  employed by the Court, and also in most other appeals to the Montana
2  Supreme Court only one counsel was involved.
3       DATED this 5th day of December, 1995.

*John W. Larson*
JOHN W. LARSON, District Judge

cc:  Don Vernay
     Greg Jackson
     Thomas Esch
     Flathead County Auditor

1/3/96
SB

RECEIVED
JAN 11 1995
JACKSON & RICE

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 96-010

FILED
JAN - 9 1996
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

RONALD ALLEN SMITH,

    Petitioner,

v.

DISTRICT COURT OF THE ELEVENTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
FLATHEAD, and HONORABLE JOHN W.
LARSON, District Judge,

    Respondents.

O R D E R

Petitioner has filed herein an application for writ of supervisory control or other alternative writ. The application was entitled "State of Montana, Plaintiff/Appellee, vs. Ronald Allen Smith, Defendant/Appellant." Pursuant to Rule 17(c), M.R.App.P., the petition has been recaptioned as shown above.

The petition seeks relief in relation to a December 5, 1995 order entered in the District Court for the Eleventh Judicial District, Flathead County, in Cause No. DC-82-126(B). That order relates to attorney fees and certain expenses, specifically including travel expenses, incurred by defense counsel in relation to the appeal of that matter to this Court.

IT IS ORDERED:

1. Pursuant to Rule 17(c), M.R.App.P., petitioner is directed to serve upon the Honorable John W. Larson, District Judge, a copy of the application for writ of supervisory control filed herein.

2. The petition for writ of supervisory control or other alternative writ is granted as specifically set forth and limited herein.

3. The following portion of the District Court's December 5, 1995 order is stricken:

> The Court, during the appeal process, does not believe that it is necessary to pay travel time to counsel since

1

EXHIBIT C

the phone lines, fax lines, etc., are available to coordinate meetings. Thus, the expenses requested for travel time by Mr. Vernay are DENIED.

Counsel for defendant and appellant shall be allowed actual and necessary travel expenses relating to preparation of the defense of the defendant and appellant in this appeal.

4. The remainder of the relief sought in the petition for supervisory control or other alternative writ is DENIED.

5. The Clerk is directed to mail a true copy of this order to counsel for petitioner, counsel for the State of Montana in Flathead County Cause No. DC-82-126(B) and to the Honorable John W. Larson, District Judge.

DATED this 9th day of January, 1996.

_____
Chief Justice

_____
_____
_____
_____
_____
_____
Justices

2

IN THE SUPREME COURT OF THE STATE OF MONTANA

Nos. 95-477 and 95-494

RECEIVED
APR 10 1996
JACKSON & RICE

STATE OF MONTANA,

    Plaintiff and Respondent,

v.

                                      O R D E R

RONALD ALLEN SMITH,

    Defendant and Appellant.

Appellant has moved to remand this case to the district court or to allow supplementation of the record on appeal. He has attached to his motion the materials he proposes be added to the record, copies of seven newspaper articles. Respondent has filed a response asking that the motion be denied.

Appellant cites this Court's opinion in State v. Keith (1988), 231 Mont. 214, 754 P.2d 474, as authority that the offered newspaper articles should be admitted to demonstrate that the District Court was swayed by public opinion or media pressure. However, the subject of the only article quoting the District Judge was the high cost of this case. In that article, Judge Larson acknowledged that costs run high in death penalty cases. Appellant has offered nothing to indicate that those high costs, nor any of the other newspaper articles, influenced the District Court in sentencing Smith.

We conclude that, to the extent the newspaper articles are not already part of the record in this case, they have not been shown to be appropriate or relevant for consideration on appellate review. Appellant's motion is therefore DENIED.

The Clerk is directed to mail copies of this order to counsel of record for the respective parties.

DATED this 9th day of April, 1996.

FILED
APR 09 1996
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

/s/ J. A. Turnage
Chief Justice

EXHIBIT D

_William E. Hunt_

_Karla M. Gray_

_W. William Leaphart_

Justices